# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DANIEL ORTIZ,
     Plaintiff,

     v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.

No. 3:16-cv-02121 (SRU)

## RULING ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS

In the instant Social Security appeal, Daniel Ortiz moves to reverse the decision by the

Social Security Administration (SSA) denying him disability insurance benefits. The

Commissioner of Social Security moves to affirm the decision. I conclude that Ortiz's arguments

for reversal lack merit and that the Administrative Law Judge ("ALJ")'s decision that Ortiz could

perform other work was supported by substantial evidence. Therefore, I grant the

Commissioner's motion and deny Ortiz's.

## I.  Standard of Review

The SSA follows a five-step process to evaluate disability claims. *Selian v. Astrue*, 708

F.3d 409, 417 (2d Cir. 2013) (per curiam). First, the Commissioner determines whether the

claimant currently engages in "substantial gainful activity." *Greek v. Colvin*, 802 F.3d 370, 373

n.2 (2d Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not

working, the Commissioner determines whether the claimant has a "'severe' impairment," i.e.,

an impairment that limits his or her ability to do work-related activities (physical or mental). *Id.*

(citing 20 C.F.R. §§ 404.1520(c), 404.1521). Third, if the claimant does have a severe

impairment, the Commissioner determines whether the impairment is considered "per se

disabling" under SSA regulations. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). If

the impairment is not per se disabling, then, before proceeding to step four, the Commissioner determines the claimant's "residual functional capacity" based on "all the relevant medical and other evidence of record." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), (e), 404.1545(a)). "Residual functional capacity" is defined as "what the claimant can still do despite the limitations imposed by his [or her] impairment." *Id.* Fourth, the Commissioner decides whether the claimant's residual functional capacity allows him or her to return to "past relevant work." *Id.* (citing 20 C.F.R. §§ 404.1520(e), (f), 404.1560(b)). Fifth, if the claimant cannot perform past relevant work, the Commissioner determines, "based on the claimant's residual functional capacity," whether the claimant can do "other work existing in significant numbers in the national economy." *Id.* (citing 20 C.F.R. §§ 404.1520(g), 404.1560(b)). The process is "sequential," meaning that a petitioner will be judged disabled only if he or she satisfies all five criteria. *See id.*

The claimant bears the ultimate burden to prove that he or she was disabled "throughout the period for which benefits are sought," as well as the burden of proof in the first four steps of the inquiry. *Id.* at 374 (citing 20 C.F.R. § 404.1512(a)); *Selian*, 708 F.3d at 418. If the claimant passes the first four steps, however, there is a "limited burden shift" to the Commissioner at step five. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). At step five, the Commissioner need only show that "there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Id.*

In reviewing a decision by the Commissioner, I conduct a "plenary review" of the administrative record but do not decide *de novo* whether a claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam); *see Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam) ("[T]he reviewing court is required to examine

the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."). I may reverse the Commissioner's decision "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek*, 802 F.3d at 374–75. The "substantial evidence" standard is "very deferential," but it requires "more than a mere scintilla." *Brault*, 683 F.3d at 447–48. Rather, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek*, 802 F.3d at 375. Unless the Commissioner relied on an incorrect interpretation of the law, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

## II.    Facts

Daniel Ortiz applied for Social Security disability insurance benefits and supplemental security income on September 5, 2013, alleging a period of disability beginning January 31, 2011. *See* ALJ Hearing Decision, R. at 13. Ortiz identified his disability as being due to the following illnesses and conditions: ankylosing spondylitis, depression, MDD, PTSD, myalgia weakness, myositis, disturbance of skin sensation, headaches, involuntary crying, arthritis, pain. *See* Disability Determination Explanation (Initial), R. at 108.

The SSA initially denied Ortiz's claim on December 11, 2013, and upon reconsideration on April 4, 2014. ALJ Hr'g, R. at 13. Ortiz requested a hearing with an ALJ. *Id*. The hearing was held on May 11, 2015. Tr. of ALJ Hr'g, R. at 75. At the hearing, ALJ Ronald G. Thomas questioned Ortiz about his previous work. *Id*. at 38–40. Ortiz replied that he had previously held several jobs, doing the following work: packing and shipping, stocking, laundry sorting, and dishwashing. *Id.* The ALJ also asked Ortiz "what's been going on to keep you…from working at any job since the last job?" *Id.* at 40. Ortiz replied that "all the pains, and the medical conditions,

mental," were keeping him from being able to work. *Id.* at 40. He stated that the worst pains were currently fibromyalgia and back pain. *Id.* at 41.

Ortiz reported that his back hurts all day "just about every day" and that the pain is "on and off." *Id.* at 41. He stated that he spends "a lot of the time" lying down to manage the pain, and must stand if he has been "sitting down for too long." *Id.* at 41–42. He reported that he is able to walk up and down the stairs in his home and uses a cane at home to remain stable. *Id.* at 43.

Ruchi, Ortiz's attorney, also questioned Ortiz. Ortiz reported that he requires Cortisone shots to help manage his pain, and that the number of shots has increased from every other month to every two weeks. *Id.* at 56–57. He also reported that he suffers from anxiety and depression, as well as PTSD from being molested as a child. *Id.* at 57–58. He stated that he has lost "almost 40 pounds" in the last year. *Id.* at 61. He stated that he wears compression socks, night splints, a boot, and special soles to manage issues with his feet. *Id.* at 62–63. He reported that he needs assistance to get dressed and tie his shoes. *Id.* at 64. He reported using a cane to get up to use the bathroom. *Id.* He stated that he had fallen approximately three times in the past six months. *Id.* at 65. He stated that he has some problems breathing. *Id.* at 66. He reported getting headaches at least one a day or every other day. *Id.* at 67.

Larry Taki, an impartial vocational exert, also testified at the hearing regarding the Dictionary of Occupational Titles. *Id.* at 69–75; ALJ Hearing Decision, R. at 13. Taki responded to hypotheticals put forth by the ALJ and Attorney Ruchi regarding individuals with limitations such as the ones Ortiz described. ALJ Decision Hearing, R. at 71–75.

On July 23, 2015, the ALJ issued an opinion finding that Ortiz "has not been under a disability within the meaning of the Social Security Act from January 31, 2011, through the date

of this decision." ALJ Hearing Decision, R. at 13. The ALJ found that although Ortiz has severe

impairments, he "does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the [required] listed impairments[,]" as defined in 20

C.F.R. 404, to receive Social Security disability insurance benefits. *Id.* at 16. The ALJ

determined that Ortiz "has the residual functional capacity to perform light work as defined in 20

C.F.R. 404.1567(b)...[he] is limited to occasional bending, twisting, squatting, kneeling,

crawling, climbing, and balancing," as well as "occasional difficulties with concentration on

difficult or complex tasks…[and] occasional interaction with supervisors, co-workers, and the

general public." *Id.* at 18.

At the first step, the ALJ found that Ortiz "has not engaged in substantial gainful activity

since January 31, 2011, the alleged onset date." *Id*. at 15. At the second step, the ALJ found that

Ortiz's major depressive disorder, post-traumatic stress disorder, multilevel spondylosis of the

lumbar spine and polyarthralgias were "severe impairments" under 20 C.F.R. §§ 404.1520(c) and

416.1520(c). *Id*.[1] At the third step, the ALJ determined that Ortiz's impairments were not per se

disabling because Ortiz "d[id] not have an impairment or combination of impairments that

medically me[t] or equal[ed] a listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1.

*Id.* at 16.

The ALJ then assessed Ortiz's residual functional capacity, and found that he could

"perform light work," with certain limitations. *Id*. at 18. Those limitations were that Ortiz (1)

could occasionally perform tasks that would require him to bend, twist, squat, kneel, crawl,

climb, and balance, (2) could occasionally complete "difficult or complex" tasks that require

---

[1] The ALJ found that Ortiz has several "non-severe" additional impairments, including "plantar fasciitis, Achilles tendinitis, weight loss, tennis elbow, and carpal tunnel syndrome." ALJ Hearing Decision, R. at 15–16.

concentration, and (3) could interact occasionally "with co-workers, supervisors, and the general public." *Id*. at 18.

The ALJ concluded that Ortiz could perform "past relevant work as a laundry sorter as generally performed." *Id.* at 22. The ALJ found that "there are other jobs existing in the national economy that he is also able to perform." *Id.* at 23. The ALJ based that decision on Ortiz's residual functional capacity in conjunction with the Medical-Vocational Guidelines and determined that a finding of "not disabled [was] therefore appropriate under the framework" of Medical-Vocational Rule 202.18. *Id.* at 24. The ALJ denied Ortiz's request for disability benefits. *Id.*

Ortiz requested a review of the ALJ's decision by the SSA's Appeals Council on August 31, 2015. Request for Review of Hearing Decision/Order, R. at 8. Holding that there was "no reason . . . to review the [ALJ]'s decision," the Appeals Counsel "denied [Ortiz's] request for review" on November 8, 2016. Notice of Appeals Council Denial, R. at 1. Ortiz then filed a complaint with this court urging the reversal of the Commissioner's decision on December 29, 2016. Compl., Doc. No. 1.

## III.    Discussion

On review, Ortiz asserts that the ALJ made the following errors: (1) he "erred in his findings as to the weight given to the medical opinions of the plaintiff's treating physician," (2) he "erred in giving no weight to the opinions" of the Advanced Practice Registered Nurse (APRN) and treating physician that Ortiz "had marked limitations in social functioning, concentration, persistence and pace," (3) he improperly relied on testimony by the vocational expert, (4) he "erred in failing to reference [Ortiz's] need for a cane to walk" and failed to reference "his mental health limitations" when determining his residual functional capacity, and

(5) erred in his credibility finding. Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 18–30. The Commissioner responds that the ALJ's "decision is supported by substantial evidence" and should be affirmed. Mem. Supp. Mot. Affirm, Doc. No. 25, at 16.

A. <u>Did the ALJ correctly evaluate the medical opinion evidence?</u>

Ortiz challenges the ALJ's treatment of the medical opinion evidence on two fronts. Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 18–26. First, he argues that the ALJ "improperly discounted the opinions of Dr. Ruiz with regard to his conclusions that [Ortiz] had physical limitations affecting [Ortiz's] ability to perform work." *Id.* at 18. Ortiz argues that the ALJ gave "little weight" to Dr. Ruiz's opinions "without explicitly considering all of the factors required" under the law, including the "frequency, length, nature, and extent" of Dr. Ruiz's treatment. *Id.* at 20. Second, Ortiz argues that the ALJ "failed to give proper weight to the evidence of [Ortiz's] mental impairments." *Id.* at 22. The Commissioner responds that the "ALJ here cited several reasons for giving the opinions little weight, and thoroughly explained his reasoning." Mem. Supp. Mot. Affirm, Doc. No. 25, at 8. The Commissioner also responds that "[i]n making the mental RFC finding, the ALJ relied on the opinions of the state agency psychologists, the consultative psychologist Dr. Zita, the observations of [Oritz's] case worker…and the treatment record," and that although an ALJ will consider medical opinions, "ultimately the ALJ must reach an RFC assessment based on the record as a whole." *Id.* at 10. With regard to both sets of opinions, I affirm the ALJ's ruling.

"The treating physician rule provides that an ALJ should defer 'to the views of the physician who has engaged in the primary treatment of the claimant,'" but need only assign those opinions "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in

[the] case record."[2] *Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013) (summary order) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. § 404.1527(c)(2)). When the ALJ considers whether to give the treating source's opinion controlling weight, he must "apply the factors listed" in SSA regulations, 20 C.F.R. § 404.1527(c)(2), including "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418. After considering those factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion," *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004), and provide "good reasons" for the weight assigned, *Burgess*, 537 F.3d at 129. But "where the ALJ's reasoning and adherence to the regulation are clear," the ALJ need not "slavish[ly] recite[] each and every factor" listed in the regulations. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). Moreover, "[g]enuine conflicts in the medical evidence are for the Commissioner"—not the court—"to resolve." *Burgess*, 537 F.3d at 128.

The Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," and has advised that, ordinarily, "a consulting physician's opinions or reports should be given little weight." *Selian*, 708 F.3d at 419; *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990). In some circumstances, however, "the report of a consultative physician may constitute [substantial] evidence" that, if it "contradict[s]" the opinion of a treating physician, renders the latter "not binding." *See Mongeur*, 722 F.2d at 1039; *see also Prince*, 490 F. App'x at 401 ("[C]onsultative examinations were still rightly weighed as

---

[2] Originally a rule devised by the federal courts, the treating physician rule is now codified by SSA regulations, but "the regulations accord less deference to unsupported treating physician's opinions than d[id] [the Second Circuit's] decisions." *See Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

medical evidence."); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) ("The report of a consultative physician may constitute . . . substantial evidence."). The question here is whether the ALJ sufficiently provided "good reasons" for weighing the opinions of the agency psychologists, consultative psychologist—Dr. Zita—and case manager—Katrina Markley—more heavily than the opinions of Ortiz's treating physician, Dr. Ruiz, and APRN Sarah Regan. *See Burgess*, 537 F.3d at 129.

ALJ Thomas gave "little weight" to Dr. Ruiz's opinion that Ortiz "would have difficulty sitting for prolonged periods and grasping weights." ALJ Hearing Decision, at 21 (referring to Exhibit 38F, Ruiz Treating Source Statement, dated 11/13/2014, R. at 959). The ALJ found that the opinion was "unsupported by the medical evidence of record." *Id.* The ALJ also stated that Dr. Ruiz is not "technically" Ortiz's treating physician because he had not treated Ortiz for one year at the time he provided the opinion. *Id.* ALJ Thomas also gave Dr. Ruiz's January 2015 medical source statement "little weight," finding that "it is not supported by the effective use of medications in treating [Ortiz's] symptoms." *Id.* (referring to Exhibit 20F, Ruiz Medical Source Statement, dated 01/12/2015, R. 616–21, and Exhibit 37F, Office Treatment Records, dated 10/01/2014 to 02/16/2015, from Community Health Center, Inc., R. at 932–33).

The ALJ gave "some weight" to Dr. Ruiz's April 2015 medical source statement that Ortiz "would have moderate limitations in mental functioning" because the ALJ found that those findings were "generally consistent with treatment notes showing acute stressors and moderate symptoms." *Id.* (referring to Exhibit 41F, Ruiz Mental Medical Source Statement, dated 04/06/2015, R. at 1064).

ALJ Thomas gave "no weight," however, to Dr. Ruiz's opinion that Ortiz "would have marked limitations in social functioning and concentration, persistence and pace or that [Ortiz]

would have repeated episodes of decompensation" because the ALJ found that the evidence provided by case manager Katrina Markley was in conflict with Dr. Ruiz's opinion. *Id.* at 21–22. Katrina Markley "indicated that [Ortiz] did an excellent job at focusing and concentrating on attending [his] appointment and following prescribed treatment." *Id.* at 22 (referring to Exhibit 49F, Treating Source Statement, dated 04/29/2015, from Community Health Center Inc., R. at 1163).

The ALJ gave Dr. Ruiz's opinion regarding Ortiz's mental functioning "no weight" because "Dr. Ruiz is a rheumatologist, not a mental health provider." *Id.*

The ALJ treated Ortiz's Global Assessment of Functioning ("GAF") score of 55 as opinion evidence. *Id.* (referring to Exhibit 36F, Office Treatment Records, dated 09/24/2014 to 02/06/2015, from Community Health Center, Inc., R. at 907). ALJ Thomas gave the GAF score provided by Advanced Practice Registered Nurse Sarah Regan as having "limited evidentiary value" because it "reveal[ed] only snapshots of impaired and improved behavior." *Id.*

The inconsistencies among the opinions of Dr. Ruiz and Sarah Regan, on the one hand, and Dr. Ruiz's treatment notes and the opinions of other healthcare providers and caregivers, on the other, presented a "[g]enuine conflict[] in the medical evidence . . . for the Commissioner to resolve." *See Burgess*, 537 F.3d at 128. As the Second Circuit has held, where a doctor's opinion is "in conflict with content in that doctor's own clinical notes, and in conflict with the opinion of [other physicians]," those factors "constitute 'good reasons' for the limited weight attributed." *Camille v. Colvin*, 562 F. App'x 25, 27 (2d Cir. 2016) (summary order). Furthermore, even if "the record contains evidence" that might support Dr. Ruiz's and Sarah Regan's opinions, it also "contains substantial evidence supporting the conclusion[s]" drawn by the other healthcare providers and case manager, and by the ALJ. *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74,

76 (2d Cir. 2012) (summary order). Because "[i]t is not [my] function to determine *de novo* whether [Ortiz] is disabled," *Brault*, 683 F.3d at 447, nor "to resolve evidentiary conflicts" in the record, *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984), I cannot quarrel with the ALJ's decision not to give controlling weight to Dr. Ruiz's and Sarah Regan's opinions.

For the same reasons, I conclude that—after he decided not to give Dr. Ruiz's and Sarah Regan's opinions controlling weight—ALJ Thomas properly evaluated the persuasiveness of the opinions under the factors listed in 20 C.F.R. § 404.1527(c)(2)–(6). "An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013). Here, the ALJ was sufficiently specific in writing that Dr. Ruiz's opinions regarding Ortiz's mental functioning were not credible because "he is not a mental health provider." ALJ Decision, R. at 22. The ALJ was also specific when he wrote that Dr. Ruiz's opinion that Ortiz would have "marked limitations in social functioning and concentration, persistence and pace" and "would have repeated episodes of decompensation" carried no weight, because those opinions were "unsupported by Katrina Markley who indicated that [Ortiz] did an excellent job at focusing and concentrating on attending [his] appointments and following up prescribed treatment." *Id.* at 21–22 (referring to Exhibit 49F, Treating Source Statement, dated 04/29/2015, from Community Health Center Inc., R. at 1163); *Camille*, 562 F. App'x at 28 ("The ALJ was permitted to consider Dr. [Ruiz's] treatment notes in weighing the opinions of Dr. [Ruiz] and [the other sources]; and []he was permitted to conclude that [the other doctors'] opinions w[ere] more reliable."). Hence, I find that the ALJ did not err with regard to his treatment of the doctor's and other healthcare providers' medical opinions.

B. <u>Did the ALJ properly consider the vocational expert's testimony?</u>

Ortiz further argues that the ALJ incorrectly relied on the vocational expert's testimony at step five regarding the occupational requirements of cafeteria attendant. Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 26. Ortiz notes that the vocational expert's testimony was "not consistent with the [Dictionary of Occupational Titles]." *Id.* When the ALJ presented the second hypothetical question to the vocational expert, which included a restriction to only occasional interaction with the public, the vocational expert testified that an individual with that type of restriction could work as a cafeteria attendant. *Id.* The expert testified that although a cafeteria attendant's "essential job duties have nothing to do with the general public," a cafeteria attendant might "less than occasionally…be approached" by a customer to answer a question. *Id.* The vocational expert testified that a cafeteria attendant could defer to his supervisor or provide a short answer to a customer if the situation arose. *Id.* The expert testified that his testimony was consistent with the Dictionary of Occupational Titles. *Id.* Ortiz, however, argues that the definition provided by the Occupational Titles for a cafeteria attendant actually includes, "may circulate among diners and serve coffee and be designated coffee server, cafeteria, or restaurant." *Id.* at 27.

The Commissioner responds that "[e]ven assuming [Ortiz] is correct about the requirements of that occupation…it was one of three representative occupations found by the vocational expert and the ALJ." Mem. Supp. Mot. Affirm, Doc. No. 25, at 15. The Commissioner argues that he only needs to demonstrate one occupation that exists in significant

numbers in the national economy, rather than three, and thus the ALJ's reliance on potentially incorrect testimony in that regard is immaterial. *Id.* The Commissioner is correct.

The Second Circuit has held that "[t]he Commissioner need show only one job existing in the national economy that [the claimant] can perform." *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b). *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011).

Ortiz does not challenge the vocational expert's other two proffered jobs. Because the Commissioner must only show one job existing in the national economy that the claimant can perform, and two unchallenged jobs were offered here, Ortiz's argument regarding the cafeteria attendant description is immaterial.

C. <u>Was the ALJ's residual functional capacity determination supported by substantial evidence?</u>

Ortiz argues that the ALJ's residual functional capacity determination was not supported by substantial evidence for two reasons: (1) because it failed to reference Ortiz's need for a cane to walk, and (2) because it failed to reference his mental health limitations. Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 27, 28. Regarding Ortiz's use of a cane, the Commissioner responds that "neither the evidence of record nor the opinions of record support [Ortiz's] assertion." Mem. Supp. Mot. Affirm, Doc. No. 25, at 11. Regarding Ortiz's mental health limitations, the Commissioner responds that "the ALJ considered and gave some weight to Dr. Ruiz' opinion on [Ortiz's] mental functioning to the extent that it was consistent with other evidence in the record, but no weight to some statements that were not supported…. Accordingly, the ALJ explicitly

considered the factors required by regulation." *Id.* at 9. I agree with the Commissioner, and therefore find no error with respect to the ALJ's residual functional capacity findings.

Between steps three and four of the SSA's analysis for disability claims, the ALJ must "determine[], based on all the relevant medical and other evidence of record, the claimant's 'residual functional capacity,' which is what the claimant can still do despite the limitations imposed by his impairment." *Greek*, 802 F.3d at 373 n.2 (citing 20 C.F.R. § 404.1520(b)). The ALJ's determination need not "perfectly correspond with" any medical source opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Rather, the ALJ is "entitled to weigh all of the evidence available to make a[] . . . finding that [is] consistent with the record as a whole." *Id.* In assessing a claimant's residual functional capacity, SSA regulations require the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," as well as "discuss the [claimant]'s ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the [claimant] can perform based on the evidence available in the case record." Social Security Ruling 96-8p, 1996 WL 374184, at *7. Finally, the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

In making a residual functional capacity determination in the present case, ALJ Thomas extensively considered Ortiz's complaints as well as his voluminous medical records. Regarding his use of a cane, the Commissioner argues that Ortiz's physical medical source statement states that he needed a cane only "at a times." Mem. Supp. Mot. Affirm, Doc. No. 25, at 11 (referring to Exhibit 20F, Ruiz Medical Source Statement, dated 01/12/2015, R. at 617). The record

indicates that Ortiz could ambulate without the use of a cane for approximately ten minutes at a time, and could continuously use his left and right hands for feeling. *See* Exhibit 20F, Ruiz Medical Source Statement, dated 01/12/2015, R. at 617–18.

Regarding his mental health limitations, the ALJ considered Dr. Ruiz's medical source statement in April 2015, indicating that Ortiz had "moderate limitations in mental functioning." ALJ Decision, R. at 21 (referring to Exhibit 41F, Ruiz Mental Medical Source Statement, dated 04/06/2015, R. at 1064). The ALJ gave "some weight" to those opinions because they were "generally consistent with treatment notes showing acute stressors and moderate symptoms." *Id.* The ALJ gave "no weight" to Dr. Ruiz's opinion that [Ortiz] would have marked limitations in social functioning and concentration, persistence and pace or that [Ortiz] would have repeated episodes of decompensation as that is unsupported by the statements by Katrina Markley who indicated that [Ortiz] did an excellent job at focusing and concentrating on attending [his] appointments and following prescribed treatment." *Id.* at 22 (referring to Exhibit 49F, Treating Source Statement, dated 04/29/2015, from Community Health Center Inc., R. at 1163). The ALJ gave Dr. Ruiz's opinion regarding Ortiz's mental functioning "no weight" because "Dr. Ruiz is a rheumatologist, not a mental health provider." *Id.*

With regard to Ortiz's own complaints, ALJ Thomas concluded that the "credibility of [Ortiz's] allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record." *Id.* at 19. For instance, "[despite [Ortiz]'s complaints, [Ortiz] is treated conservatively and no treating or examining physician has imposed restrictions that would preclude work activity." *Id.* at 20. Hence, the ALJ correctly "t[ook] the claimant's reports of pain and other limitations into account" and "exercise[d] discretion in weighing the credibility of the claimant's testimony in

light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per

curiam). He did not, and "[was] not required to[,] accept the claimant's subjective complaints

without question." *Id.*; *cf. Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) (summary

order) ("treating physician's opinions . . . based upon plaintiff's subjective complaints of pain

and unremarkable objective tests" were "not 'well supported by medically acceptable clinical

and laboratory diagnostic techniques'" and not entitled to "controlling weight") (citing 20

C.F.R. §§ 404.1527(d)(2) , 416.927(d)(2)); *Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir.

2009) (summary order) ("[W]here the ALJ's decision to discredit a claimant's subjective

complaints is supported by substantial evidence, [the court] must defer to his findings.").

Furthermore, it is clear from the ALJ's decision that he extensively considered Ortiz's

complaints as well as his voluminous medical records and provided support from the record for

the determinations he made.  An ALJ need not mention every piece of evidence, particularly

when the record is so large, as it is here. *Chickocki*, 729 F.3d at 178 n.3 ("[a]n ALJ need not

recite every piece of evidence that contributed to the decision, so long as the record 'permits [the

court] to glean the rationale of an ALJ's decision"); *Mongeur*, 722 F.2d 1030 (an ALJ need not

recite every piece of evidence or "explain[] why he considered particular evidence unpersuasive

or insufficient to lead him to a conclusion"). Even if "the administrative record may also

adequately support" the conclusion that Ortiz was limited in his use of his hands/arm and had

ambulatory limitations, the ALJ's "contrary finding[]" is supported by substantial evidence and

"must be given conclusive effect." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

Finally, "once an ALJ finds facts, [I] can reject those facts only if a reasonable factfinder

would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (internal quotation marks omitted).

Under that "very deferential standard of review," I consider the ALJ's residual functional

capacity finding to have been based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Greek*, 802 F.3d at 375. I hold that a reasonable factfinder need not perforce conclude that Ortiz requires limitations for his need for a cane and for his mental health. Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 27. Therefore, because there is substantial evidence to support the determination, I find no error with respect to the ALJ's decision on both points. *See Selian*, 708 F.3d at 417.

D. Did the ALJ properly find that Ortiz lacked credibility?

Ortiz also argues that the ALJ "failed to adequately set forth his findings as to why he found [Ortiz] not fully credible with sufficient specificity as required." Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 30. He also argues that "the ALJ's findings as to [Ortiz's] activities of daily living are simply not accurate and directly contradict [Ortiz's] testimony at the hearing." *Id.* at 31. The Commissioner responds that "the ALJ provided legitimate reasons for his credibility finding," and thus his decision should be upheld. Mem. Supp. Mot. Affirm, Doc. No. 25, at 12.

Under SSA regulations, "[w]hen determining a claimant's [residual functional capacity], the ALJ is required to take the claimant's reports of pain and other limitations into account." *Genier*, 606 F.3d at 49. The ALJ is not, however, "required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* "Credibility findings of an ALJ are entitled to great deference and . . . can be reversed only if they are patently unreasonable." *Pietrunti v. Dir., Off. of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotation marks omitted); *see Aponte*, 728 F.2d at 591 ("If the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."). I do not consider the ALJ's credibility

findings to have been "patently unreasonable" or unsupported by "substantial evidence," and therefore find that the ALJ did not err in his credibility finding here. *See Pietrunti*, 119 F.3d at 1042; *Aponte*, 728 F.2d at 591.

SSA regulations "provide a two-step process for evaluating a claimant's assertions of pain and other limitations." *Genier*, 606 F.3d at 49. "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record," after taking into account "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings." *Id.* (quoting 20 C.F.R. § 404.1512(b)(1)(iii)). Ultimately, "[a]s a fact-finder, the ALJ has the discretion to evaluate the credibility of a claimant," *Pietrunti*, 119 F.3d at 1042 (internal quotation marks omitted), and "[i]t is the function of the [ALJ], not the reviewing courts, . . . to appraise the credibility of witnesses, including the claimant," *Aponte*, 728 F.2d at 591 (brackets omitted).

In the instant case, the ALJ found that Ortiz suffered from the "severe impairments" of "major depressive disorder, post-traumatic stress disorder (PTSD), multilevel spondylosis of the lumbar spine and polyarthralgias," ALJ Decision, R. at 15, and so apparently determined that Ortiz "suffer[ed] from a medically determinable impairment that could reasonably be expected to

produce the symptoms alleged."[3] *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). At the second stage, the ALJ concluded that Ortiz's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." ALJ Decision, at 19. He also found, however, that Ortiz's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.*; s*ee Genier*, 606 F.3d at 49 (internal quotation marks omitted). The ALJ noted, for instance, that notwithstanding Ortiz's "complaints of back pain and polyarthralgias," his neurological examination "showed no focal signs." *See* ALJ Decision, R. at 19 (referring to Exhibit 7F, Office Treatment Records, dated 05/15/2013 to 09/20/2013, from Community Health Center Inc., R. at 385). He was instructed to continue walking and exercising. *Id.* (referring to Exhibit 37F, dated 10/01/2014 to 02/16/2015, from Community Health Center, Inc., R. at 933). He reported good control of his Raynaud's syndrome with medications in January 2015. *Id.* (referring to Exhibit 37F, Office Treatment Records, dated 10/01/2014 to 02/16/2015, from Community Health Center, Inc., R. at 934).

So too, the ALJ found Ortiz's testimony inconsistent with "objective evidence of record." *See Genier*, 5 at 50. For example, although Ortiz testified that he "lies down for most of the day" and that "he [does] not really help with his four-year-old-son," the ALJ found that Ortiz's "ability to handle the care of a young child does not comport with his allegation of disability." ALJ Decision, R. at 19–20. The ALJ stated that Ortiz was "treated conservatively and no treating or examining physician has imposed restrictions that would preclude work activity." *Id.* at 20. In November 2013, his treating clinician encouraged him to perform light exercise. *Id.* (referring to

---

[3] The ALJ discounted Ortiz's complaints with regard to other disorders, such as plantar fasciitis, Achilles tendinitis, weight loss, tennis elbow, and carpal tunnel syndrome. *See* ALJ Decision, R. at 16. Ortiz does not appear to have challenged the decision with regard to those illnesses.

Exhibit 39F, Office Treatment Records, dated 08/27/2014 to 12/08/2014, from Sound Community Services, R. at 983). In January 2015, Ortiz increased his exercise "by doing stretches as recommended by his therapist." *Id.* The ALJ pointed to the fact that Ortiz had reported that "he wanted to learn how to swim for his children." *Id.* (referring to Exhibit 26F, Office Treatment Records, dated 05/22/2014 to 09/18/2014, from Community Health Center, Inc., R. at 856). He also reported that he "planned to join a gym to walk on the treadmill." *Id.* (referring to Exhibit 36F, Office Treatment Records, dated 09/24/2014 to 02/06/2015, from Community Health Center Inc., R. at 905).

"[A] claimant need not be an invalid to be found disabled under the Social Security Act," *Balsamo*, 142 F.3d at 81, but the ALJ reasonably could have found that Ortiz's relatively high level of activity and his ordinary medical records "weighed against a positive credibility finding [with regard] to [Ortiz]'s subjective assessment of the intensity of his symptoms." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (summary order); *Calabrese*, 358 F. App'x at 277–78 ("[T]he ALJ's adverse credibility finding was . . . amply supported by evidence that [the claimant] . . . admitted her ability to cook, clean, do laundry, shop, and handle her own finances despite her professed claims of disabling and continuous pain and mental confusion."). Hence, "the ALJ's decision to discount [Ortiz]'s subjective complaints is supported by substantial evidence." *See Calabrese*, 358 F. App'x at 278.

Ortiz insists that his "testimony as to his limitations in activities of daily living [is] consistent with the references to chronic pain and limitations with walking that are contained in the medical records" and that "it was error for the ALJ to discredit" Ortiz's testimony. Mem. Supp. Mot. Reverse, Doc. No. 20-1, at 32. The Second Circuit has held, however, that "[t]o be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to

preclude *any* substantial gainful employment." *Dumas*, 712 F.2d at 1552 (emphasis added). Here, the ALJ considered Ortiz's subjective complaints, his doctors' opinions, and the medical record as a whole, and concluded that Ortiz was "capable of performing light work" because his limitations did not "preclude any substantial gainful employment." *See Balsamo*, 142 F.3d at 82; *Dumas*, 712 F.2d at 1552. Because "[t]here was substantial medical evidence in the record that supported the ALJ's determination that [Ortiz] was able to undertake a variety of physical tasks, and it is clear that the ALJ took into consideration [Ortiz]'s legitimate limitations . . . [in] the [residual functional capacity] determination," I affirm the ALJ's appraisal of Ortiz's credibility. *See Prince*, 490 F. App'x at 400.

## IV.    Conclusion

I grant the Commissioner's motion to affirm, and deny Ortiz's motion to reverse. The Clerk shall enter judgment and close the case.


So ordered.

Dated at Bridgeport, Connecticut, this 29th day of March 2018.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge